UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

IN THE MATTER OF ANDRE MARONIAN, AN
INDIVIDUAL; REBELLION, INC., A NEVADA
CORPORATION; JAMESON FORTE, AN
INDIVIDUAL; JAMESON FORTE, LLC, A NEW
YORK LIMITED LIABILITY COMPANY; AND
VINCENT BOVENZI, AN INDIVIDUAL,

                              Petitioners,         07-CV-6314 (CJS)

-vs-                                                       DECISION AND ORDER

AMERICAN COMMUNICATIONS NETWORK, INC.,
A MICHIGAN CORPORATION,
                              Respondent.

---

APPEARANCES

For the Petitioners:         Dale A. Worrall, Esq.
                                  Douglas A. Foss, Esq.
                                  Harris Beach LLP
                                  99 Garnsey Road
                                  Pittsford, New York 14534

For Respondent.:         Jeffrey J. Calabrese, Esq.
                                  Kimberly I. Shimomura,Esq.
                                  Megan K. Dorritie, Esq.
                                  Harter Secrest & Emery LLP
                                  1600 Bausch and Lomb Place
                                  Rochester, New York 14604-2711

INTRODUCTION

This action involves a commercial dispute between a telecommunications company and its former independent sales representatives, primarily involving alleged breaches of non-solicitation covenants. After Respondent commenced an arbitration proceeding in Michigan, Petitioners commenced this action, seeking to stay the

arbitration. Now before the Court is a motion [#3] by Respondent, for an order dismissing this action, or, in the alternative, transferring the action to the United States District Court for the Eastern District of Michigan. For the reasons that follow, Respondent's application is denied.

## BACKGROUND

Respondent, American Communications Network, Inc. ("ACN") is a telecommunications company, which distributed its products through multi-level marketing ("MLM")[1], as opposed to using a salaried sales staff. In this regard, ACN contracted with Independent Representatives ("IRs"), who operated within the MLM system, by selling products and recruiting new IRs. According to ACN, it generally had its IRs sign a pre-printed contract ("IR Agreement"), which contained an arbitration provision with a Michigan forum selection clause. However, Petitioners maintain that there are no enforceable arbitration agreements between themselves and ACN. Petitioners operated as IRs for ACN for several years, until December 2006, when they decided to sell the products of a competing telecommunications company. Petitioners allege that when ACN learned that they intended to switch companies, it made a series of defamatory statements about them to its remaining IRs, in an attempt to discourage any other IRs from also leaving.

On or about March 7, 2007, ACN commenced an arbitration proceeding in

---

[1]According to the Verified Petition in this action, "MLM is a system of selling goods or services through a network of Independent Representatives ("IRs") or distributors. A typical MLM system works through recruitment. IRs build their business by selling products and recruiting new IRs. When an IR recruits 'sponsors' a new IR into the company, that IR becomes a member of the sponsoring IR's 'downline.' The sponsoring IR then earns 'residual income' based upon the sales of the IRs in his/her downline." (Verified Petition ¶ 8).

2

Oakland County, Michigan, which is located in the Eastern District of Michigan.[2] Petitioners have participated in the Michigan arbitration proceeding with regard to preliminary matters, but have consistently maintained that they are not required to arbitrate.

On May 18, 2007, Petitioners commenced a proceeding in New York State Supreme Court, Monroe County, seeking to stay the Michigan arbitration, pursuant to § 7503(b) of the New York Civil Practice Law & Rules ("CPLR"). In support of their application to stay the Michigan arbitration, Petitioners allege that "there is no valid agreement compelling them to arbitrate disputes." (Worrall Supporting Affirmation ¶ 2). For example, petitioner Andre Maronian ("Maronian") denies that he ever signed an IR Agreement at all, let alone one containing an arbitration clause. Petitioner Vincent Bovenzi ("Bovenzi") signed an IR Agreement, in July 1997, but the agreement does not contain an arbitration provision.[3] Petitioner Jameson Forte ("Forte") signed an IR Agreement containing a Michigan arbitration clause, however, he subsequently formed Jameson Forte, LLC ("Forte, LLC"), a New York limited liability company, which, in January 2003, signed a new IR Agreement with ACN. According to Forte, he and ACN agreed that his individual IR Agreement terminated upon the execution of the agreement by Forte LLC. Consequently, Maronian, Bovenzi, and Forte maintain that

---

[2]Prior to that, on January 10, 2007, ACN commenced an action, against Petitioners, in Oakland County Circuit Court in Michigan, for breach of contract and misappropriation of trade secrets. In that action, ACN requested injunctive relief. Petitioners, who all reside in the Western District of New York, removed the action to the United States District Court for the Eastern District of Michigan, and then moved to dismiss for lack of personal jurisdiction. Rather than opposing the motion to dismiss, ACN voluntarily discontinued the action.

[3]Bovenzi's agreement also contains a forum selection clause, indicating that disputes between himself and ACN "shall be exclusively resolved in the Circuit Court for Oakland County State of Michigan or Federal Court located in Detroit, Michigan." However, ACN's motion is not based on that provision.

they are not personally bound by any arbitration agreement with ACN.

Similarly, the remaining petitioners, Forte LLC and Rebellion, Inc. ("Rebellion")[4], also deny that are required to arbitrate with ACN. In that regard, although both Forte LLC and Rebellion signed IR Agreements containing a Michigan arbitration clause, they contend that the agreements lack "mutuality of obligation" and are therefore not enforceable.

On June 22, 2007, ACN removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § § 1332(a), 1441 and 1446. On June 29, 2007, ACN filed the subject motion [#3] to dismiss or transfer venue, pursuant to Federal Rule of Civil Procedure ("FRCP) 12(b)(3) and/or 28 U.S.C. § 1406. ACN's argument, simply stated, is that venue in the Western District of New York is improper, because this Court lacks the power to stay the Michigan arbitration proceeding. On this point, ACN purports to rely on Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Specifically, ACN contends that, pursuant to 9 U.S.C. § 4, the only federal district court which may stay the pending arbitration is the one in the district where the arbitration is pending, namely, the District Court for the Eastern District of Michigan. (ACN Memo of Law [#5] at 2) ("Clear statutory and caselaw authority establishes that in a proceeding governed by the [FAA], a request to compel or stay arbitration must be brought in the district where the arbitration proceedings are to be held or are pending.")

However, Petitioners maintain that the FAA is inapplicable here, because they

---

[4]Rebellion is a Nevada corporation owned by Maronian. In August 2006, Rebellion signed an IR Agreement with ACN, containing a provision requiring that disputes be resolved by binding arbitration in Southfield, Michigan.

4

never agreed to arbitration.  Consequently, Petitioners contend that ACN's motion must be denied, or, alternatively, that the matter must be transferred to the Eastern District of Michigan.

On November 15, 2007, counsel for the parties appeared before the undersigned for oral argument of the motion.  The Court, having thoroughly considered the parties' written submissions and the arguments of counsel, now denies Respondent's application.

## DISCUSSION

Respondent brings this motion to dismiss or transfer for improper venue, pursuant to FRCP 12(b)(3) and 28 U.S.C. § 1406.  FRCP 12(b)(3) provides for dismissal of claims due to "improper venue."  The burden is on the plaintiff to establish that venue is correct.  However, where, as here, a court is asked to resolve a 12(b)(3) motion based upon pleadings and affidavits, "to avoid dismissal "the plaintiff need only make a prima facie showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (citation and internal quotation marks omitted).  Moreover, a court "analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, [must] view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) (citation omitted).  If the plaintiff cannot establish that the chosen venue is correct, "[t]he district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406.

When applying FRCP 12(b)(3) and 28 U.S.C. § 1406(a), "[t]he threshold inquiry . . . is for the Court to determine whether the case is indeed in the "wrong" district, as that

phrase is used in the statute." *SST Global Technology, LLC v. Chapman*, 270 F.Supp.2d 444, 452 (S.D.N.Y. 2003). In cases such as this one, where the matter was removed from state court, the general venue statute is 28 U.S.C. § 1441(a). *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) ("[T]he removal statute provides that venue is proper in the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a)[.] Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 . . . governs venue in removed cases.") (citation omitted). Pursuant to 28 U.S.C. § 1441(a), venue in this action is proper in the Western District of New York.

However, the FAA contains its own venue provisions. Specifically, 9 U.S.C. § 4, which Respondent contends applies here, states, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the

> Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C.A. § 4. The United States Supreme Court has explained that the FAA's venue provisions are "permissive," and supplement the general federal venue statute. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 195, 120 S.Ct. 1331, 1334 (2000).[5] The Supreme Court further explained that the FAA's venue provisions, enacted in 1925, were intended to have a "liberalizing effect" in two significant respects. First, they greatly expanded the choice of venue, and second, they provided for the enforcement of forum selection agreements. *Id.* 529 U.S. at 199-200, 120 S.Ct. at 1336-37.[6] Consequently, the FAA's venue provisions should be viewed keeping in mind the act's "statutory policy of rapid and unobstructed enforcement of arbitration agreements," as well as its aim to achieve "desired flexibility of parties in choosing a site for arbitration." *Id.*, 529 U.S. at 201, 120 S.Ct. at 1337 (citation omitted).

Section 4 of the FAA reflects both of those policies, because it provides permissive venue rules, subject, however, to the parties' contractual choice of forum, if any. For example, Section 4 indicates that "[a] party aggrieved by the alleged failure,

---

[5] Respondent, and some courts, maintain that the *Cortez Byrd Chips* decision, which was primarily concerned with FAA §§ 9, 10, and 11, does not apply to FAA § 4. (Respondent's Reply Memo [#11] at 7-8). However, as will be discussed further below, that view appears incorrect.

[6] The Supreme Court explained that in 1925, the general federal venue statute was "considerably more restrictive . . . than the one current today," and that statute's "restrictive application was all the more pronounced due to the courts' general inhospitality to forum selection clauses." *Id.* 529 U.S. at 199-200, 120 S.Ct. at 1336-37. The Court noted that in addition to liberalizing venue choices, the FAA venue provisions "authori[zed] a binding agreement selecting a forum." *Id.* 529 U.S. at 200, 120 S.Ct. at 1337.

7

neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under Title 28." (Emphasis added). Further, the statute provides that

> [t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*. The hearing and proceedings, *under such agreement*, shall be within the district in which the petition for an order directing such arbitration is filed.

(Emphasis added). Taken as a whole, Section 4 provides that a motion to compel arbitration may be brought in any district court having jurisdiction, unless the parties have agreed to a different forum, in which case, the action must be brought in the agreed-upon forum, in accordance with the parties' agreement. The statute's requirement that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed," apparently emphasizes that the parties' choice of forum must be upheld. In other words, *where there is a valid and enforceable arbitration agreement containing a forum selection clause*, venue is appropriate only in the selected forum. That being so, the "hearing and proceedings" under such an agreement should, naturally, be held within the district in which the petition was filed. *See e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("[T]his Circuit has concluded that where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.") (emphasis in original); *see also, Ansari v. Qwest*

8

*Communications Corp.*, 414 F.3d 1214, 1219-1220 (10th Cir. 2005) ("The majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4.").

While the court in *Cortez Byrd Chips* was not considering FAA § 4 specifically, it appears that the court's description of the FAA's venue provisions as "permissive" applies equally to § 4. For example, the court described § 4 as "more obviously permissive" than the sections that it was considering. *Id.*, 529 U.S. at 199, 120 S.Ct. at 1336. Moreover, although § 4 provides for restricted venue in instances where there is a forum selection agreement, the FAA's other venue provisions do so as well.[7] For instance, FAA § 9 begins by stating that, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, *and shall specify the court*, then at any time within one year after the award is made any party to the arbitration may apply *to the court so specified* for an order confirming the award." (Emphasis added). Section 9 later indicates that, "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9.[8] Section 9 is therefore similar to Section 4, in that it contains a broad venue provision that applies unless the parties select a particular forum.

With the foregoing applicable principles in mind, the Court will consider

---

[7]The *Cortez Byrd Chips* decision does not include a lengthy discussion of issues relating to forum selection clauses, presumably because the arbitration agreement at issue in that case did not include such a clause. *See, Cortez Byrd Chips, Inc.*, 529 U.S. at 195, 120 S.Ct. at 1334.

[8]As the *Cortez Byrd* decision explains, this latter provision is permissive, and does not require that the action to confirm the award be brought in the same district within which the award was made.

Respondent's arguments concerning venue in this case. At the outset, it is helpful to emphasize the very specific grounds upon which Respondent's motion is based. Respondent does not argue, for example, that this Court must transfer venue because the parties have a valid arbitration agreement containing a Michigan forum selection clause. To the contrary, Respondent insists that the existence of the alleged forum selection agreement is not the issue before the Court at this time.[9] Nor does Respondent argue that venue in the Western District of New York is improper under the general federal venue statutes. Instead, Respondent maintains that pursuant to the FAA, only the district court in the venue where an arbitration case is pending may issue orders affecting the arbitration. As will be discussed below, the Court concludes that Respondent's understanding of the law is incorrect.

Although Respondent contends that dismissal is required under FAA § 4, it is unclear whether that provision is applicable in this case, since it applies to actions to *compel* arbitration. This action, on the other hand, is a motion to stay arbitration, brought under New York State law. Respondent cites several district court cases for the proposition that "there is no principled difference between a motion to compel arbitration and a motion to stay arbitration." (Respondent's Memo [#5] at 10). For example, Respondent cites *Horizon Plastics, Inc. v. Constance*, No. CIV. A.99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000). Interestingly, *Horizon Plastics* relied upon a footnote in a decision by the Second Circuit Court of Appeals, stating that "a number of

---

[9]Respondent's Memo of Law [#5] at 6 ("While the issue of whether valid arbitration agreements exist is relevant to the parties' dispute, that is not the issue currently pending before this Court. The only issue facing the Court now is whether this Court is the proper forum for the determination of that issue, or whether the District Court for the Eastern District of Michigan is the sole federal court with authority to issue orders affecting the arbitration currently pending within that District, pursuant to the FAA.") (emphasis in original).

10

courts have held that, in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings." *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 n.3 (2d Cir. 1996). However, the *Westmoreland Capital* decision specifically declined to decide whether FAA § 4 applies to motions to stay arbitration. *Id.* ("Because we find that subject matter jurisdiction is lacking, we do not need to decide whether the FAA gives federal courts the power to stay arbitration proceedings."). Consequently, the statement relied upon by the district court in *Horizon Plastics* is dicta.[10] In addition to being dicta, the Second Circuit's footnote mistakenly identified a First Circuit decision, *Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 868 (1st Cir. 1981) (Breyer, J.), as having held that FAA § 4 could be applied to stay arbitration. Actually, the Circuit Court in *Societe Generale* did not make such a determination. Instead, it held that the FAA did not prohibit a Massachusetts district court from staying an arbitration proceeding pursuant to Massachusetts *state law*. *Id.* at 868 ("Thus, we conclude that the district court had adequate authority under Massachusetts law to stay the Massachusetts arbitration."). Consequently, the *Societe Generale* decision provides strong support for

---

[10]Respondent also relies upon *Professional Transportation, Inc. v. American Casualty Co. of Reading, PA*, No. 3:06-cv-83-RLY-WGH, 2007 WL 30554 (S.D. Ind. Jan. 3, 2007). However, *Professional Transportation* is factually inapposite. The case involved two contracts, one of which contained an arbitration provision with a forum selection clause, and one which contained no arbitration provision. The plaintiff brought a declaratory judgment action in a district court outside of the forum selected in the first agreement. The plaintiff maintained that the parties' dispute involved the agreement which did not contain an arbitration provision. However, the district court granted the defendants' motion to dismiss for improper venue, based upon allegations in the plaintiff's complaint, from which it appeared that the contract containing the arbitration agreement/forum selection clause played a central role in the parties' dispute. Unlike the instant case, there was no dispute over whether the parties had actually entered into a contract containing an arbitration provision. Similarly, *UAL Corp. v. Mesa Airlines, Inc.*, 88 F.Supp.2d 910 (N.D. Ill. 2000), another case relied on by Respondent, is factually inapposite because, in that case, it was undisputed that the parties had a valid arbitration agreement, designating a forum other than the one where the district court action was filed.

11

the view that FAA § 4 does not apply to motions to stay arbitration. Assuming that FAA § 4 does not apply, then venue in this case is correct under 28 U.S.C. § 1441, and Respondent's motion must be denied.

However, even assuming *arguendo* that FAA § 4 applies to motions to stay arbitration, Respondent's motion must still be denied. As discussed above, FAA § 4 provides that venue is appropriate in any district court, subject to an agreement by the parties to arbitrate in a particular forum. Here, Petitioner's deny that they agreed to arbitration. Consequently, cases such as *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer* and *Ansari v. Qwest Communications Corp.*, in which the parties' arbitration agreements were undisputed, are not on point.[11] A case that is directly on point, however, is *Textile Unlimited, Inc. v. A.BMH and Co., Inc.*, 240 F.3d 781 (9th Cir. 2001). In *Textile Unlimited*, the parties entered into a series of contracts for the sale of yarn, in which the plaintiff sent the defendant purchase orders, and the defendant responded by sending invoices and order acknowledgments. *Id.* at 783. However, the invoices and order acknowledgments contained additional terms not included in the purchase orders, including an arbitration clause and a Georgia forum selection clause. *Id.* A dispute arose, and the defendant commenced an arbitration proceeding in Georgia. The plaintiff then commenced an action in district court in California, seeking to enjoin the

---

[11]The *Lauer* case involved an arbitration clause, but not a forum selection clause. The *Lauer* decision is consequently somewhat puzzling, since it discusses forum selection clauses, as if the parties had agreed to a particular forum. *Id.*, 49 F.3d at 327-28. Moreover, although the court states, late in its decision, that Merrill Lynch "agreed to arbitration in Florida," it previously states that Merrill Lynch agreed to arbitration, but not in Florida. *Id.* at 325, 330. Still later, the decision indicates that the forum was selected by the arbitrator, and suggests that Merrill Lynch did not object initially. *Id.* at 330. In any event, unlike the instant case, *Lauer* involved a situation where the parties had filed competing motions to compel arbitration under FAA § 4, and the court was concerned that one of the parties was using § 4 as a forum-shopping device. *Id.*

Georgia arbitration, and the district court granted the injunction. In granting the injunction, the California district court concluded that the parties never agreed to the arbitration clause or the Georgia forum selection clause. The Ninth Circuit affirmed, finding that venue was proper in the California court, notwithstanding the pending Georgia arbitration and the alleged arbitration agreement. Ultimately, the Ninth Circuit held that venue in Georgia was not required, since the existence of the arbitration agreement was disputed. Further, the Circuit Court found that venue in the California court was proper under the general venue statute, 28 U.S.C. § 1391.

In holding that venue was not required in the forum designated by the disputed contract provisions, the court in *Textile Unlimited* stated:

> The venue clause on A.. BMH's forms, limiting venue to Fulton County, Georgia, does not control this [venue] issue. Like the arbitration clause, the question of whether this clause is a part of the contract between the parties is at issue.
>
> This result is consistent with the underpinnings of arbitration theory. One of the threads running through federal arbitration jurisprudence is the notion that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Requiring a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause would run counter to that fundamental principle.

*Textile Unlimited, Inc. v. A..BMH and Co., Inc.* 240 F.3d at 786 (citations and internal quotations omitted). As mentioned, the court in *Textile Unlimited* considered the facts of the case and concluded that the parties never agreed to the disputed terms, and consequently, the case remained in California. *Id.* at 788 ("[T]he supplemental terms proposed by [the defendant], including the arbitration clause, do not festoon the contract between the parties."). Presumably, if the court in *Textile Unlimited* had

13

instead determined that the parties agreed to the disputed terms, then it would have dismissed the case for improper venue or transferred it to Georgia.[12]

Similarly, in the instant case the parties disagree as to the existence of the alleged contracts. Consequently, the Court could not grant Respondent's motion to dismiss or transfer for improper venue, based on an alleged forum selection clauses, without first examining, among other things, whether such agreements exists. *See, Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir. 1998) ("In the absence of a clear finding of a contract, the district court's determination that the parties reached agreement on a forum-selection clause was premature.").

Respondent maintains, however, that where an arbitration proceeding has commenced in a particular jurisdiction, any district court action that might *affect* the arbitration must proceed in the same jurisdiction. (Respondent's Memo of Law [#5] at 13) ("As both the plain language of § 4 of the FAA and the cases interpreting it make clear, a court may not reach beyond the borders of its district to either compel or stay arbitration."). FAA § 4, though, does not support that broad contention. Neither is the Court aware of any binding authority which supports that view. To the extent that Respondent has cited non-binding authority for that proposition, the Court declines to follow it. For example, the case of *Prudential Securities, Inc. v. Desmond*, No. CIV. A.

---

[12]Some have interpreted the *Textile Unlimited* decision as holding that FAA § 4 permits a district court to ignore the parties' forum selection agreement. *See, Ansari v. Qwest Comm. Corp.*, 414 F.3d at 1219. The *Ansari* decision somewhat glosses over the facts of the *Textile Unlimited* case, such as the fact that the court ultimately concluded that no forum selection agreement existed. Nevertheless, to the extent that the *Textile Unlimited* decision may be read as indicating that FAA § 4 permits a court to disregard a valid and enforceable forum selection agreement, this Court agrees with the *Ansari* decision that such a holding would be incorrect.

96-CV-8407, 1997 WL 570926 (E.D.Pa. Sep. 5, 1997) is factually inapposite, since it involved a situation where the parties agreed to arbitration in a different forum. *See, Id.* at 2 ("Prudential has filed a motion in the Eastern District of Pennsylvania to enjoin arbitration proceedings in the Northern District of California, notwithstanding the fact that it has agreed to arbitration in California before the PSE.").[13]

Another case cited by Respondent, *Kipany Prods., Ltd. v. RMH Teleservices, Inc.*, No. 97 Civ. 7599 (LMN), 1997 WL 706445 (S.D.N.Y. Nov. 13, 1997) is factually more similar, though not identical, to the instant case.[14] In *Kipany*, the plaintiff sought to stay an arbitration proceeding pending in another district, and the district court transferred venue of the action to the venue where the demand for arbitration had been filed, notwithstanding the fact that the parties disputed whether there was a contract between them. *Id.* In doing so, the court did not specifically find that venue in its district was incorrect, but instead, reasoned that transfer was advisable, based on the possibility that a valid arbitration agreement might exist, which the court would not be able to enforce, due to the limitations of FAA § 4. *Id.* at *2 ("[T]he Court, if it found that defendant's arguments in favor of arbitration had merit, would not be able to compel plaintiff to arbitrate [in the other district.]."). However, it appears that the majority of courts in this Circuit have not taken that approach, but instead, have, at the outset, considered whether the parties agreed to arbitrate, even where the disputed arbitration

---

[13]Another case cited by Respondent, *Argonaut Ins. Co. v. Century Indem. Co.*, Civil Action No. 05-5355, 2006 U.S.Dist. Lexis 60765 (E.D.Pa. Aug. 28, 2006), is also factually inapposite.

[14]The *Kipany* matter also involved issues of personal jurisdiction that are not present in the instant case. At least, the parties have not raised personal jurisdiction issues in connection with the pending motion. However, based on the procedural history of this case, it appears that Petitioners believe they are not subject to personal jurisdiction in Michigan.

15

provision would require arbitration in another forum. *See, e.g., Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc.*, 269 F.Supp.2d 356, 363 (S.D.N.Y. 2003) ("As this Court has previously explained, where a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains "referable to arbitration" elsewhere, if a forum is designated, and must then order a stay pursuant to § 3 instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue.") (citations and internal quotation marks omitted)[15]; *see also, Provident Bank v. Kabas*, 141 F.Supp.2d 310, 319 (E.D.N.Y. 2001) (Considering, in the first instance, whether the parties agreed to arbitration, even though the disputed arbitration provision called for arbitration to proceed in the State of Ohio).

Finally, although Respondent contends that this Court lacks power to stay the Michigan arbitration, the Court disagrees. First, while the Second Circuit has not specifically stated whether the FAA allows a district court to stay an arbitration, it has "affirmed district court decisions staying or enjoining arbitration proceedings without finding it necessary to articulate its basis for doing so." *Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*, 49 F.Supp.2d 331, 342 (S.D.N.Y. 1999) (*citing Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995) and *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1481 (2d Cir.1993)); *U.S. v. Eberhard*, No. 03 CR.562(RWS),

---

[15] It is notable that in *Sea Spray Holdings*, there was no question that the United States District Court for the Southern District of New York was able to issue orders affecting the arbitration proceeding pending in Utah. Prior to the case being removed to federal court, the New York State court issued an order staying the Utah arbitration. *Id.* at 359. Subsequently, once it was determined that the parties had agreed to arbitration in Utah, the federal court issued an order dissolving the stay. *Id.* at 364.

16

2004 WL 616122 at *3 (S.D.N.Y. Mar. 30, 2004) ("[Some] courts in this Circuit have concluded that § 4 of the FAA permits the issuance of a stay . . . in those circumstances where a stay would be incidental to the court's power under the FAA to enforce contractual agreements calling for arbitration[.]"). Unfortunately, there is not any clear guidance as to whether a court may stay an arbitration pending in another district. *See, e.g., U.S. v. Eberhard*, 2004 WL 616122 at *3 n. 5 ("[The fact that] at least one of the pending NASD arbitrations appears to be scheduled to take place in Los Angeles, California . . . plac[es] in question this Court's jurisdiction to stay that proceeding."). However, the few cases dealing with this topic which the Court has found indicate that the Court could, if necessary, stay the Michigan arbitration.

The case of *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524 (9th Cir. 1985), involved a situation where the United States District Court for the Southern District of New York ("S.D.N.Y.") stayed a California state court proceeding, pursuant to the FAA. Specifically, after the plaintiff demanded arbitration, the defendant filed an action in California state court seeking a stay of arbitration and a declaration that no arbitration agreement existed, and the plaintiff commenced an action in the S.D.N.Y., seeking "an order under section 4 of the [FAA], compelling arbitration, and for a stay of [the] action in the California court." *Id.* at 1527. The S.D.N.Y. concluded that the parties had agreed to arbitration in California, and stayed the California state court action. Recognizing that it was prevented by FAA § 4 from ordering that arbitration take place in California, the S.D.N.Y. stated that, "[w]hile the statute requires an order to compel arbitration to be issued by the Court in which arbitration is mandated, this Court has the

authority, having found an agreement to arbitrate, to stay a state court proceeding until

a [California] federal court can order the parties to proceed." *Id.* Subsequently however,

the California state court issued a contrary ruling, finding that the parties had not

agreed to arbitrate, and when the plaintiff applied to the United States District Court for

the Central District of California ("S.D.Cal.") for an order compelling arbitration under

FAA § 4, in accordance with the S.D.N.Y.'s order, the S.D.Cal. dismissed the petition.

*Id.* The Ninth Circuit, though, reversed, holding that the S.D.N.Y. decision was *res*

*judicata*, and that the S.D.Cal. was therefore required to issue an order compelling

arbitration, in accordance with the S.D.N.Y.'s order. *Id.* at 1528-1531. The Ninth Circuit

did not specifically address the issue of the S.D.N.Y.'s authority to stay the California

state court action, since the parties never appealed the S.D.N.Y.'s ruling. *Id.* at 1528

("Because we find that consideration of [defendant's] objections to the S.D.N.Y.'s order

is barred by *res judicata*, we do not discuss the substance of those objections.").

Nevertheless, the *Americana Fabrics* case provides support for the view that this Court

could, if necessary, stay the Michigan arbitration. *See also, Cable Belt Conveyors, Inc.*

*v. Alumina Partners of Jamaica*, 669 F.Supp. 577, 581-82 (S.D.N.Y. 1987) ("[T]he

notion that a federal court is precluded from hearing a petition simply because a related

matter was brought in a state court is contrary to standards enunciated by the Supreme

Court and applied in this district. As noted by the Supreme Court [in *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246

(1976)], the general rule 'as between state and federal courts . . . is that the pendency

of an action in the state court is no bar to proceedings concerning the same in the

federal court having jurisdiction.'") (other citation omitted), *aff'd* 857 F.2d 1461 (2d Cir. 1987)(abrogated on other grounds), *cert den.* 484 U.S. 855, 108 S.Ct. 161 (1987).[16]

While the issue is by no means settled in this Circuit, the Court finds, based on the foregoing cases, that it has the authority to stay the Michigan arbitration, should Petitioners prevail in this action.

## CONCLUSION

Respondent's motion [#3], for an order dismissing this action, or, in the alternative, transferring the action to the United States District Court for the Eastern District of Michigan, is denied.

SO ORDERED.

Dated:   January 8, 2008
         Rochester, New York

ENTER:

*[signature]*
CHARLES J. SIRAGUSA
United States District Judge

---

[16]At least one court has also held that, regardless of its ability to stay an arbitration pending in another jurisdiction, it could accomplish the same result by enjoining the parties, over whom it had personal jurisdiction, from proceeding with the arbitration. *See, L.F. Rothschild & Co., Inc. v. Katz*, 702 F.Supp. 464, 468 (S.D.N.Y. 1988) ("[B]ecause this court has jurisdiction over Katz and Scher, it need not address the question of whether it has jurisdiction to prohibit the [Chicago arbitration]. . . . This court has the power to enjoin Katz and Scher from proceeding with the [Chicago] arbitration, and by doing so it effectively can stay that arbitration.").