UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IN THE MATTER OF ANDRE MARONIAN, AN
INDIVIDUAL; REBELLION, INC., A NEVADA
CORPORATION; JAMESON FORTE, AN
INDIVIDUAL; JAMESON FORTE, LLC, A NEW
YORK LIMITED LIABILITY COMPANY; AND
VINCENT BOVENZI, AN INDIVIDUAL,

                                        Petitioners,          07-CV-6314 (CJS)

        -vs-
                                                             DECISION AND ORDER

AMERICAN COMMUNICATIONS NETWORK, INC.,
A MICHIGAN CORPORATION,
                                        Respondent.

_____


APPEARANCES

For the Petitioners:        Dale A. Worrall, Esq.
                            Douglas A. Foss, Esq.
                            Harris Beach LLP
                            99 Garnsey Road
                            Pittsford, New York 14534

For Respondent.:            Jeffrey J. Calabrese, Esq.
                            Harter Secrest & Emery LLP
                            1600 Bausch and Lomb Place
                            Rochester, New York 14604-2711

                            Jamie J. Spannhake, Esq.
                            Dewey & LeBoeuf LLP
                            125 West 55th Street
                            New York, New York 10019


INTRODUCTION

        This action involves a commercial dispute between a telecommunications company

and its former independent sales representatives, primarily involving alleged breaches of

1

non-solicitation covenants.  After Respondent commenced an arbitration proceeding in

Michigan, Petitioners commenced this action, seeking to stay the arbitration.  Now before

the Court is Petitioners' motion [#19] for summary judgment and Respondent's cross-

motion [#21] for the same relief.  For the reasons that follow, both applications are granted

in part and denied in part.

## BACKGROUND

Unless otherwise indicated, the following are the undisputed facts of the case.

Respondent, American Communications Network, Inc. ("ACN") is a telecommunications

company, which distributed its products through multi-level marketing ("MLM")[1], as

opposed to using a salaried sales staff.  In this regard, ACN contracted with Independent

Representatives ("IRs"), who operated within the MLM system, by selling products and

recruiting new IRs.  Petitioners all worked as IRs for ACN at various times.  In that

capacity, Petitioners "earned commissions by independently soliciting customers and

recruiting IRs to sign-on with ACN." (Petitioners' Verified Petition ¶ 11).  Petitioners

maintain that they essentially were independent contractors, inasmuch as they were

required to develop their own sales techniques and pay their own expenses. (Id. at ¶ ¶ 10-

14).

According to ACN, it generally had its IRs sign a pre-printed contract ("IR

Agreement") containing an arbitration provision with a Michigan forum selection clause.

---

[1]According to the Verified Petition in this action, "MLM is a system of selling goods or services through a network of Independent Representatives ("IRs") or distributors.  A typical MLM system works through recruitment. IRs  build their business by selling products and recruiting new IRs.  When an IR recruits 'sponsors' a new IR into the company, that IR becomes a member of the sponsoring IR's 'downline.'  The sponsoring IR then earns 'residual income' based upon the sales of the IRs in his/her downline." (Verified Petition ¶ 8).

However, ACN admits that petitioner Vincent Bovenzi's ("Bovenzi") IR agreement contained no arbitration clause.  One of the two remaining Petitioners, Andre Maronian ("Maronian"), never signed an IR agreement in his individual capacity.  However, Maronian signed an IR agreement on behalf of Petitioner Rebellion, Inc. ("Rebellion"), a corporation of which he is the sole officer and shareholder.  Rebellion's IR agreement contains a clause requiring that disputes between the parties be arbitrated in Southfield, Michigan. (Rebellion Agreement ¶ 19).  The remaining Petitioner, Jameson Forte ("Forte"), signed an IR Agreement containing a Michigan arbitration clause in his individual capacity on December 7, 1999. (Forte Agreement ¶ 22).  Subsequently, Forte formed Jameson Forte, LLC ("Forte, LLC"), a New York limited liability company, and on January 17, 2003 Forte, on behalf of Forte LLC, signed a new IR Agreement containing a Michigan arbitration clause. (Forte LLC Agreement ¶ 21).

The IR agreements also contained a provision stating that, notwithstanding the arbitration clauses, ACN could seek preliminary or permanent injunctive relief in any court. (*See, e.g.*, Forte Agreement ¶ 22).  The IR agreements further stated that a document entitled "Policies and Procedures" was incorporated into the agreements by reference, and that ACN had the right to modify the Policies and Procedures.  However, the Policies and Procedures documents stated that, in the event of a conflict between the IR agreements and the Policies and Procedures, the IR agreements would govern.  And finally, the IR agreements contained a non-compete provision, that prohibited IRs from soliciting ACN's customers.

In December 2006 the parties terminated their business relationship, although they dispute the reasons for the termination.  Petitioners contend that they were merely

3

exploring other business opportunities, and that when ACN learned of it, ACN launched a pre-emptive campaign to defame Petitioners.  On the other hand, ACN contends that Petitioners had already made plans to leave ACN and work for a competitor, and that, in violation of their IR agreements, Petitioners were soliciting ACN customers and other IRs to switch to the competitor.  In any event, on December 20, 2006, Maronian, Forte and Bovenzi gave ACN written notice that they were terminating the IR agreements.

In January 2007, ACN commenced an action against Petitioners in the State of Michigan, Oakland County Circuit Court, asserting claims for breach of contract and misappropriation of trade secrets, and seeking money damages and injunctive relief. (Petitioner's Verified Petition, Exhibit B).  Petitioners removed the action to the United States District Court for the Eastern District of Michigan, Southern Division.  Subsequently, Petitioners moved to dismiss for lack of personal jurisdiction.  On March 8, 2007, ACN voluntarily discontinued the action without prejudice.

On or about March 7, 2007, ACN commenced an arbitration proceeding against Petitioners in Oakland County, Michigan.  In the arbitration demand, ACN stated, *inter alia*, that Petitioners "breached the terms of the non-solicitation clauses in their IR agreements." (Petitioner's Verified Petition Exhibit D).  The arbitration demand further stated that the demand was made pursuant to an arbitration agreement dated November 16, 2006. (*Id.*). ACN did not attach copies of any IR agreements to the demand, but instead, attached a copy of ACN's Policies and Procedures. (*Id.*).  Subsequently, Petitioners have participated in the Michigan arbitration proceeding with regard to preliminary matters, but have consistently maintained that they are not required to arbitrate.

4

On May 18, 2007, Petitioners commenced the subject action in New York State Supreme Court, Monroe County, seeking to stay the Michigan arbitration, pursuant to § 7503(b) of the New York Civil Practice Law & Rules ("CPLR").[2]  In support of their application to stay the Michigan arbitration, Petitioners alleged that "there is no valid agreement compelling them to arbitrate disputes." (Worrall Supporting Affirmation ¶ 2).

On June 22, 2007, ACN removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § § 1332(a), 1441 and 1446.  On June 29, 2007, ACN filed a motion [#3] to dismiss or transfer venue, pursuant to Federal Rule of Civil Procedure ("FRCP) 12(b)(3) and/or 28 U.S.C. § 1406.  By Decision and Order [#14] filed on January 14, 2008, the Court denied that application.

On March 11, 2008, Petitioners filed the subject summary judgment motion [#19]. Petitioners' raise three arguments in support of their application.  First, they contend that Maronian, Forte and Bovenzi are not parties to an arbitration agreement in their individual capacities.  Second, they maintain that any arbitration agreements between ACN and Rebellion and Forte LLC, to the extent that they are contained in ACN's Policies and Procedures, are unenforceable, because they lack mutuality of obligation.  And third, Petitioners contend that ACN waived its right to arbitration when it commenced the Michigan state-court proceeding asserting the same claims that it now seeks to arbitrate.

On April 10, 2008, ACN filed the subject cross-motion for summary judgment [#21]. At the outset, ACN admits that there is no arbitration agreement between itself and

---

[2]New York CPLR § 7503(b) states in relevant part: "Application to stay arbitration. . . . [A] party . . . may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with or that the claim sought to be arbitrated is barred by limitation under subdivision (b) of section 7502."

Bovenzi.  Otherwise, ACN disputes Petitioners' arguments.  First, in response to

Petitioners' argument that the Policies and Procedures lack mutuality of obligation, ACN

contends that Rebellion and Forte LLC's arbitration agreements are contained in their

respective IR agreements, not in ACN's Policies and Procedures.  Next, ACN contends

that Maronian and Forte are bound, in their individual capacities, by Rebellion's and Forte

LLC's arbitration agreements, respectively, either as a result of piercing the corporate veils

of Rebellion and Forte LLC, or based on theories of agency and estoppel.  And finally,

ACN contends that it did not waive its right to arbitration by commencing the Michigan

state-court proceeding, since the IR agreements specifically gave ACN the right to seek

injunctive relief in court.

On July 17, 2008, counsel for the parties appeared before the undersigned for oral

argument of the motion.  At that time, counsel disagreed as to whether the Court should

apply the law of New York State or the Law of Michigan.  Nevertheless, they agreed that

the issue was unimportant, since there is no difference between the two with regard to the

issues before the Court. The Court has thoroughly considered the parties' written

submissions and the arguments of counsel.

## DISCUSSION

The standard for granting summary judgment is well established.  Summary

judgment may not be granted unless "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment

bears the burden of establishing that no genuine issue of material fact exists. *See,*

6

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996), *cert denied*, 517 U.S. 1190 (1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

*ACN Did Not Waive Arbitration*

It is clear that a party may waive its right to arbitration, and in that regard, the law is well settled:

> A party may waive its right to arbitration, and each case must be decided on the basis of its individual facts. However, waiver of a contractual right to arbitration is not favored. A party arguing there has been a waiver of this right bears a heavy burden of proof. The party must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts.
>
> In general, defending the action or proceeding with the trial, that is defending an action without seeking to invoke a right to compel arbitration, constitutes a waiver of the right to arbitration.

*Salesin v. State Farm Fire & Cas. Co.*, 229 Mich.App. 346, 356, 581 N.W.2d 781,786 (1998) (citations omitted).

Applying these principles, the Court finds, as a matter of law, that ACN did not waive its right to arbitration.  At the outset, it is undisputed that, pursuant to the terms of the IR agreements,  ACN was entitled to bring a court action seeking injunctive relief. Accordingly, the fact that it did so was not inconsistent with its right to arbitration.  Rather, ACN's lawsuit was only inconsistent with a right to arbitrate insofar as it sought to litigate claims for breach of contract and misappropriation of trade secrets.  However, ACN never actually pursued such claims beyond the pleading stage, and, in fact, discontinued the action after obtaining preliminary injunctive relief.  Accordingly, to the extent that ACN's actions were contrary to its right to arbitration, they were essentially inchoate.

Moreover, Petitioners have not shown that they suffered prejudice as a result of ACN's aborted decision to assert claims for breach of contract claim and misappropriation of trade secrets claims in court.  In that regard, in support of their summary judgment motion, Petitioners did not initially allege that they suffered any prejudice.  Nor, in response to ACN's cross-motion, did Petitioners submit evidentiary proof in admissible form concerning prejudice.  Instead, Petitioners' attempt to show prejudice is limited to the

8

following statement in their reply memorandum of law:

> ACN's commencement of a court action in Michigan most certainly caused
> Petitioner's to suffer prejudice.  It was merely the first step in this already
> protracted litigation which has run its course through the federal and state
> courts in both Michigan and New York.  Yet, the merits of the underlying
> case have never been reached.  Nevertheless, Petitioners have been forced
> to hire counsel in both states, defending against ACN's indecisive and
> erratic litigation strategy.

(Pet. Reply Memo of Law at 14).  This conclusory statement fails to provide evidence of

prejudice for several reasons.

First, as already discussed, ACN was entitled to bring a court action to seek

injunctive relief, and therefore, the mere fact that Petitioners were brought into court in

Michigan does not establish prejudice.  Moroever, the Michigan court proceeding was

extremely short-lived, lasting less than two months.  ACN never pursued its legal claims

beyond the pleading stage, and no discovery was taken.  Upon discontinuing the action,

ACN immediately filed a demand for arbitration, in response to which Petitioners

commenced the subject action seeking to quash such arbitration.  Therefore, the instant

lawsuit, which Petitioners elected to bring in New York using New York counsel, really has

nothing to do with ACN's initial lawsuit.  Nor is there any merit to Petitioner's attempt to

draw a connection between ACN's initial lawsuit and the alleged protracted nature of this

lawsuit. In short, Petitioners have not shown that they suffered any prejudice as a result of

ACN's inclusion of legal claims along with its claim for injunctive relief in Michigan state

court.  Consequently, ACN is entitled to summary judgment on the issue of waiver.

*The Rebellion and Forte LLC IR Agreements Are Enforceable*

Rebellion and Forte LLC contend that they are not required to arbitrate the

underlying dispute.  Essentially, Rebellion and Forte LLC argue that: 1) when ACN filed its

demand for arbitration, it indicated that the arbitration agreement was contained in an

agreement dated November 16, 2006, which does not exist; and 2) the only document

attached to the arbitration demand was ACN's Policies and Procedures document, which

is not an enforceable contract under Michigan law.

Petitioners are correct that the arbitration demand filed by ACN in March 2007

inaccurately stated that arbitration was required by an agreement dated November 16,

2006.  Moreover, since ACN attached the Policies and Procedures to the arbitration

demand instead of the IR agreements,  it might have appeared that ACN was relying on

the arbitration clause in the Policies and Procedures documents.  However, the Court

need not dwell on these points, since, on May 21, 2008, ACN filed a corrected Arbitration

Demand, which clarifies that the demand is made pursuant to the IR agreements executed

by Forte LLC and Rebellion, on January 17, 2003 and August 1, 2006, respectively.

(Siegfried Reply Affirmation [#25-2]).  Petitioners have not argued or demonstrated that

the Rebellion IR agreement or the Forte LLC IR agreement is unenforceable.  Accordingly,

Rebellion's and Forte LLC's application for summary judgment, based on the allegedly

unenforceable nature of ACN's Policies and Procedures, is denied, and ACN's cross-

motion for summary judgment against Rebellion and Forte LLC is granted.

*Maronian and Forte are bound by the Rebellion and Forte LLC IR Agreements*

It is well settled that "[t]here are five theories 'for binding nonsignatories to

arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4)

veil-piercing/alter ego; and 5) estoppel.'" *MAG Portfolio Consultant, GMBH v. Merlin

Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (*citing Thomson-CSF, S.A. v. Am.*

*Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)).  Here, ACN argues that Forte and

Maronian are required to participate in arbitration, based on the arbitration clauses

contained in the Rebellion and Forte LLC[3] IR agreements, pursuant to the theories of alter

ego/veil piercing, agency, and estoppel.  Since the Court finds that Maronian and Forte are

required to arbitrate under the estoppel theory, it need not discuss the other two theories.[4]

As for the estoppel theory, the legal principles underlying the theory are well-

settled:

> Under the estoppel theory, a company knowingly exploiting an agreement
> with an arbitration clause can be estopped from avoiding arbitration despite
> having never signed the agreement.  Guided by ordinary principles of
> contract and agency, we have concluded that where a company knowingly
> accepted the benefits of an agreement with an arbitration clause, even
> without signing the agreement, that company may be bound by the
> arbitration clause.  The benefits must be direct-which is to say, flowing
> directly from the agreement.

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d at 61.  In the

instant case, Maronian and Forte contend that they cannot be forced to arbitrate under the

estoppel theory, since they received no benefit from the Rebellion and Forte LLC IR

Agreements.  The Court disagrees.  As Maronian and Forte detail in the Petition in this

action, the IR agreements enabled them to earn a living by participating in ACN's MLM

system.  More specifically, the IR Agreements enabled Maronian and Forte to earn

---

[3]Although Forte, in his individual capacity, signed an IR agreement containing an arbitration clause, he maintains that he is not bound by that agreement, since he subsequently executed an IR agreement on behalf of Forte LLC. (*See*, Pet. Memo of Law [#19-2] at 11).  ACN does not challenge that assertion.

[4]However, the Court briefly notes that there appears to be insufficient evidence in the record to establish the alter ego/veil piercing theory. (*See, e.g.*, ACN Memo of Law [#21-5] at 14, n. 6).  Moreover, as to ACN's agency theory, it appears that merely "signing an arbitration agreement as an agent for a disclosed principal is not sufficient to render the agent a party to the arbitration clause." *Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., Inc.*, 933 F.Supp. 1170, 1178 (S.D.N.Y. 1996) (Citations omitted).

commissions by soliciting customers and recruiting other IRs to sign on with ACN. (Pet Reply Memo at 7).  On the other hand, Petitioners' statements concerning an alleged lack of "benefit" from the parties' business relationship are really nothing more than complaints about working conditions. (*See, e.g.*, Pet. Reply Memo [#24] at 8) ("IRs are required to pay all of their telephone, travel and entertainment expenses associated with growing their business.").  There is no genuine issue of material fact that Maronian and Forte each received direct benefits from Rebellion's and Forte LLC's IR agreements.  Accordingly, the Court finds as a matter of law that Maronian and Forte are required to arbitrate the subject dispute.

CONCLUSION

For the reasons stated above, the application by Bovenzi is granted, the application by Maronian, Forte, Rebellion and Forte, LLC is denied, and the application by ACN is granted except as to Bovenzi. The Clerk of the Court is directed to enter judgment in favor of Bovenzi as against ACN, and in favor of ACN as against Maronian, Forte, Rebellion and Forte, LLC.  The Clerk is further directed to close this action.

SO ORDERED.

Dated:     July 23, 2008
           Rochester, New York

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge